UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-CIV-22626-BLOOM/Valle

SODIKART USA,

    Plaintiff,

v.

GEODIS WILSON USA, INC.,

    Defendant.

_____/

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant Geodis Wilson USA, Inc.'s ("Defendant" or "Geodis Wilson") Motion for Summary Judgment, ECF No. [39] (the "Motion"). The Court has reviewed the Motion, all supporting and opposing filings and submissions, and the record in the case. For the reasons that follow, Geodis Wilson's Motion for Summary Judgment is **GRANTED**.

### I. PROCEDURAL BACKGROUND

Plaintiff Sodikart USA's ("Plaintiff" or "Sodikart") single-count Complaint seeks damages against Geodis Wilson under the Carmack Amendment, 49 U.S.C. § 14706.[1] ECF No. [1]. Defendant timely answered the Complaint. *See* ECF No. [6]. The parties have engaged in mediation, discovery and trial preparation. Defendant filed the instant Motion on July 30, 2014;

---

[1] While the Complaint makes reference to the Carriage of Goods by Sea Act, Ch. 228, 49 Stat. 1207 (1936) (codified as a note to 46 U.S.C. § 30701) ("COGSA"), *see* Complaint ¶ 22, and Defendant dedicated considerable space in its Motion to that provision, Plaintiff has clarified that "the only recovery sought in the complaint was under the Carmack Amendment" and has eschewed any basis for relief in COGSA. ECF No. [40] at 2-3. The Court will read the Complaint no more broadly than does Plaintiff itself, and will consider it as seeking relief only under the Carmack Amendment.

Plaintiff timely responded on August 14, 2014, ECF No. [40] (the "Response"); and Defendant timely replied on August 25, 2014, ECF No. [42] (the "Reply"). The parties have properly submitted statements of facts and attendant evidence in support of and opposition to the Motion. *See* ECF Nos. [38], [40-7], [41].

## II. MATERIAL FACTS

Plaintiff is in the business of importing racing and rental karts for sale in the United States. ECF No. [38] ¶ 1; ECF No. [40-7] ¶ 1. In January 2013, non-party Octane Raceway purchased karts and various related accessories from Plaintiff. ECF No. [38] ¶ 2; ECF No. [40-7] ¶ 2. The karts were manufactured in Coureon, France by an affiliate of Plaintiff, non-party Sodikart SA, and shipped by way of Le Havre, France, to Houston, Texas. The karts were then transported by rail and truck to Octane Raceway in Scottsdale, Arizona. ECF No. [38] ¶¶ 4, 9; ECF No. [40-7] ¶¶ 4, 9. Plaintiff asserts, and Defendant concedes, that the karts and accessories arrived damaged by water and corrosion, as well as by concussion due to the tipping or falling of pallets containing the karts in transit. *See* ECF No. [38] ¶ 5; ECF No. [40-7] ¶ 5; *see also* ECF No. [38-6] at p. 3 of 38; ECF No. [38-7] at p. 11 of 23.

The parties dispute Defendant's role in the transport of those karts and accessories from France to their final destination in Arizona. Defendant contends that it did not transport or handle the karts and took no active role in shipping them, but acted as a receiving agent in the United States. ECF No. [38] ¶¶ 6, 13. Specifically, Defendant claims that the karts were transported from Sodikart SA to port at Le Havre by non-party Trans-Containers du Maine, and that Defendant arranged the shipment from Le Havre to port in Houston, and from there to Arizona, for non-party Cargo Container Line Ltd., which in turn arranged for transport with Mediterranean Shipping Company. *Id*. ¶¶ 7-9. Plaintiff does not dispute that Mediterranean

Shipping Company actually transported the karts from France to their final destination.  Plaintiff claims that Defendant represented itself to Plaintiff as a "one stop shop" for "ocean shipping, trucking, insurance and customs clearance" providing "the services of assembly, consolidation, breaking, bulk and distribution," as a "freight forwarder" for purposes of the transport.  *See* ECF No. [40-7] ¶¶ 6-7, 13; ECF No. [40-1] ¶¶ 5, 12.  Plaintiff has also produced an email from an employee of Defendant to a third party which states, with reference to Defendant, "As you may already know, Sodikart has decided to change freight forwarders."  ECF No. [40-6] at 1.

The parties further dispute the authenticity and validity of the bill of lading issued with respect to the transport.  Defendant has exhibited copies of a single bill of lading for the transport from Le Havre to Arizona (issued by Defendant's French Affiliate, Geodis Wilson France).  *See* ECF No. [38-3] ("Bill of Lading"); ECF No. [38-4] ("Sea Waybill"); ECF No [38-2] at 15:7-9.  It supports the authenticity of those copies as true and correct with the unrebutted deposition testimony of Defendant's corporate representative to that effect, *see* ECF No. [38-2] at 19:21-24, and with the corroborative testimony of Plaintiff's corporate representative that, following the routine practice between Defendant and Plaintiff in their three-year course of business, Defendant would have provided Plaintiff a bill of lading like the copy evidenced for the transport in question.  *See* ECF No. [38-1] at 19:2-20:17.[2]  Controverting that evidence, Plaintiff stresses that Defendant has not introduced the original and executed bill of lading, notes (based on a sworn affidavit from its corporate representative) that Plaintiff could not locate an email from Defendant with the bill of lading for the transport in question attached (email attachment being the routine means of such communication between the parties), and highlights that the front and back of the Bill of Lading are in different colored inks.  *See* ECF No. [40-7] ¶ 11; ECF No. [40-

---

[2] Plaintiff's corporate representative further testified that he did not remember if the Bill of Lading evidenced at his deposition was, in fact, the one issued with the shipment in question.  *See* ECF No. [38-1] at 19:11-21.

3

1] ¶¶ 8-10; Reply at 7-8.  Plaintiff's corporate representative stated (and Plaintiff argues), on those bases, that the Bill of Lading was produced by Defendant after Plaintiff alerted Defendant to their claim for damages.  *See* ECF No. [40-1] ¶ 8.

### III. SUMMARY JUDGMENT STANDARD

A party may obtain summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The parties may support their positions by citation to the record, including *inter alia*, depositions, documents, affidavits, or declarations.  Fed. R. Civ. P. 56(c).  An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party."  *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Id.* (quoting *Anderson*, 477 U.S. at 247-48).  The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in its favor.  *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *Howard v. Steris Corp.*, 550 F. App'x 748, 750 (11th Cir. 2013) ("The court must view all evidence most favorably toward the nonmoving party, and all justifiable inferences are to be drawn in the nonmoving party's favor.").

"[T]he court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied."  *Carlin Commc'n, Inc. v. Southern Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986); *see also Aurich v. Sanchez*, 2011 WL 5838233, at *1 (S.D. Fla. Nov. 21, 2011) ("If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then the court must not grant summary judgment." (citing *Hairston v. Gainesville Sun Publishing Co.*, 9

F.3d 913 (11th Cir. 1993)).  The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact.  *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  Once this burden is satisfied, "the nonmoving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in his favor.  *Shiver*, 549 F.3d at 1343.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006).  Even where an opposing party neglects to submit any alleged material facts in controversy, the court must still be satisfied that all the evidence on the record supports the uncontroverted material facts that the movant has proposed before granting summary judgment.  *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

## **VI. ANALYSIS**

Through this action, Plaintiff seeks recovery from Defendant under the Carmack Amendment regarding karts and accessories shipped by Plaintiff and damaged in transit from France to their final destination in Scottsdale, Arizona.  Defendant, in the instant Motion, argues that Plaintiff's Carmack Amendment claim fails as a matter of law because (a) the shipment at issue was governed by a single bill of lading for transport from a foreign country to a United

States destination, with no separate bill of lading issued or required for the United States-domestic leg of transportation, rendering the Carmack Amendment inapplicable; and (b) Defendant acted neither as a "motor carrier" nor a "freight forwarder" as required for application of the Carmack Amendment. Defendant is correct on the first and, ultimately, dispositive issue.

A.    **The Carmack Amendment Does Not Apply to the Shipment at Issue Here**

The Carmack Amendment "provides the exclusive cause of action for interstate shipping contract claims." *White v. Mayflower Transit, LLC*, 543 F.3d 581, 584 (9th Cir. 2008). Generally, the Carmack Amendment governs interstate cargo claims, controls and limits the liability of common carriers for in-transit cargo and preempts common or state law remedies that increase a common carrier's liability beyond the actual loss or injury to the property. *See*, *e.g.*, *Smith v. United Parcel Serv.*, 296 F.3d 1244, 1246 (11th Cir. 2002) ("The Carmack Amendment creates a uniform rule for carrier liability when goods are shipped in interstate commerce."); *Hansen v. Wheaton Van Lines, Inc.*, 486 F. Supp. 2d 1339, 1343-44 (S.D. Fla. 2006) (Carmack Amendment preempt all state, common and statutory law regarding the liability of an interstate common carrier for claims arising out of shipments within its purview). It was enacted in 1906 as an amendment to the Interstate Commerce Act of 1887 codifying a common law rule of strict liability on common carriers, and is now part of the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 14706. The Carmack Amendment imposes strict liability on "motor carriers" and "freight forwarders" and provides, in relevant part:

> (1) Motor carriers and freight forwarders. — A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by

>> (A) the receiving carrier,
>
>> (B) the delivering carrier, or
>
>> (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading and, except in the case of a freight forwarder, applies to property reconsigned or diverted under a tariff under section 13702.
>
> Failure to issue a receipt or bill of lading does not affect the liability of a carrier. A delivering carrier is deemed to be the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination.
>
> (2) Freight forwarder. — A freight forwarder is both the receiving and delivering carrier.  When a freight forwarder provides service and uses a motor carrier providing transportation subject to jurisdiction under subchapter I of chapter 135 to receive property from a consignor, the motor carrier may execute the bill of lading or shipping receipt for the freight forwarder with its consent.  With the consent of the freight forwarder, a motor carrier may deliver property for a freight forwarder on the freight forwarder's bill of lading, freight bill, or shipping receipt to the consignee named in it, and receipt for the property may be made on the freight forwarder's delivery receipt.

49 U.S.C. § 14706(a); *see also UPS Supply Chain Solutions, Inc. v. Megatrux Transp., Inc.*, 750 F.3d 1282, 1285-86 (11th Cir. 2014) ("The Carmack Amendment is a strict liability statute. When a shipper shows delivery of goods to a carrier in good condition and non-delivery or delivery in a damaged condition, there arises a prima facie presumption of liability.").

However, the Carmack Amendment does not apply to shipments from a foreign country to a final destination in the United States unless the domestic leg of transportation is governed by a separate bill of lading.  *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.*, 799 F.2d 697, 701 (11th Cir. 1986) ("[W]hen a shipment of foreign goods is sent to the United States with the intention that it come to final rest at a specific destination beyond its port of discharge, then the domestic leg of the journey (from the port of discharge to the intended destination) will be subject to the Carmack Amendment *as long as* the domestic leg is covered by separate bill or bills of lading." (emphasis added)); *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S.

7

89, 100 (2010) (adopting rule in *Swift* and holding that the Carmack Amendment does not apply to a shipment originating overseas under a single through bill of lading, i.e., without a separate bill of lading issued for the domestic, inland segment of an overseas import shipment); *Altadis USA ex rel. Fireman's Fund Ins. Co. v. Sea Star Line, LLC*, 458 F.3d 1288, 1293 (11th Cir. 2006) (a separate, domestic bill of lading is required for application of the Carmack Amendment).

Here, since there was no separate bill of lading issued for the domestic leg of transport – the rail and truck transportation of the karts from port in Houston, Texas to their final destination in Scottsdale, Arizona – the Carmack Amendment does not apply. The Bill of Lading provides for combined transport, through shipment from Le Havre, France to Scottsdale, Arizona. ECF No. [38-3]; ECF No. [38-4]. "Carmack does not apply if the property is received at an overseas location under a through bill that covers the transport into an inland location in the United States." *Kawasaki*, 561 U.S. 103.

Plaintiff attempts to create a factual dispute by challenging the validity and authenticity of the Bill of Lading. However, the Court need not addresses this issue of fact to resolve Defendant's Motion. Assuming (despite Plaintiff's generally unavailing evidence) that the through Bill of Lading produced by Defendant is invalid, and even assuming, as Plaintiff implies, that Defendant never issued a bill of lading prior to the shipment in question, Plaintiff's Carmack Amendment fails because there was no separate bill of lading issued or required for the inland shipment from Houston to Scottsdale. *Swift*, *Altadis*, *Kawasaki* and their progeny uniformly hold that it is the existence of, or requirement for, a domestic bill of lading that determines whether the Carmack Amendment applies. *See Kawasaki*, 561 U.S. 102-03 ("Carmack applies only to transport of property for which Carmack requires a receiving carrier

to issue a bill of lading, regardless of whether that carrier erroneously fails to issue such a bill."); *Altadis*, 458 F.3d at 1291 (Carmack Amendment does not apply unless the domestic, overland leg of transport is itself covered by a separate bill of lading); *see also UPS Supply Chain Solutions*, 750 F.3d at 1286 n.2 (Carmack Amendment would not apply to shipment from overseas to inland U.S. location "under one logistical plan"); *Amer. Road Serv. Co. v. Consolid. Rail*, 348 F.3d 565, 568 (6th Cir. 2003) (the Carmack Amendment does not apply "to a shipment under a through bill of lading unless a domestic segment of the shipment is covered by a separate domestic bill of lading."); *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 703 (4th Cir. 1993) (same). If there is no separate bill of lading for the domestic, inland segment of the shipment, and no such bill of lading is required, the Carmack Amendment does not apply.

Plaintiff does not contend that a separate bill of lading for the Houston-to-Scottsdale segment of the shipment was actually issued by Defendant (or any other party). Rather, accepting *arguendo* the factual dispute manufactured by Plaintiff, Defendant did not issue any valid or binding bill of lading at all. While, if the Carmack Amendment is otherwise applicable to Defendant, Defendant was required to issue a bill of lading pursuant to 49 U.S.C. § 14706(a), Defendant was *not* required to issue a *separate* bill of lading for the domestic leg of the kart and accessories transportation. *See Kawasaki*, 561 U.S. 104-05 (explaining that the Carmack Amendment and COGSA permit through bills of lading for shipments from overseas to an inland U.S. destination, and do not require a separate bill of lading for the domestic leg of such a shipment). Therefore, whether Defendant issued a valid through bill of lading or none at all is not a genuine issue of material fact to be resolved. The domestic, inland leg of the combined, through transportation of the karts and accessories from Le Havre, France via Houston, Texas to Scottsdale, Arizona was not governed by a separate bill of lading. As such, the Carmack

Amendment does not apply, and Defendant must be afforded summary judgment on this independent ground.

### B. The Court Need Not Address Whether Defendant Qualifies as a Freight Forwarder Under the Carmack Amendment

Defendant argues, in the alternative, that the Carmack Amendment does not apply because Defendant was not a "freight forwarder" with respect to the shipment at issue here. The Carmack Amendment defines a "freight forwarder" as:

> [A] person holding itself out to the general public (other than as a pipeline, rail, motor, or water carrier) to provide transportation of property for compensation and in the ordinary course of its business
>
> > (A) assembles and consolidates, or provides for assembling and consolidating, shipments and performs or provides for break-bulk and distribution operations of the shipments;
> >
> > (B) assumes responsibility for the transportation from the place of receipt to the place of destination; and
> >
> > (C) uses for any part of the transportation a carrier subject to jurisdiction under this subtitle.
>
> The term does not include a person using transportation of an air carrier subject to part A of subtitle VII.

49 U.S.C. § 13102(8).

By sworn affidavit of its designated representative, Plaintiff contends that Defendant represented itself to Plaintiff and generally functions as a "one stop shop" for what amounts to international sea and land shipping and transportation, providing services including all of those listed in the relevant statutory definition of a freight forwarder. *See* ECF No. [40-7] ¶¶ 6-7, 13; ECF No. [40-1] ¶¶ 5, 12. It has also produced an email in which Defendant's employee describes Defendant to a third party as a "freight forwarder," with specific reference to Plaintiff. *See* ECF No. [40-6]. In other words, Plaintiff contends that a genuine factual dispute precludes summary judgment on this material issue, i.e., whether Defendant is a freight forwarder within the meaning of the Carmack Amendment. While, seemingly, a factual issue may be raised, it has

10

no import. As the Court finds that the Carmack Amendment is inapplicable to the shipment at issue here, *see supra* Section IV.A, it need not reach or address this issue.

## V. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED and ADJUDGED** that Defendant Geodis Wilson USA Inc.'s Motion for Summary Judgment, ECF No. [39], is **GRANTED**.

The Clerk of Court is directed to **CLOSE** this case and **TERMINATE** any impending deadlines, and any pending motions are **DENIED** as moot.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 3rd day of September, 2014.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record